**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>　　Plaintiff, 　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　　　　　)<br>v. 　　　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　　　　　)<br>AQUA VIE BEVERAGE CORP., et al, 　　　　)<br>　　Defendants. 　　　　　　　　　　　　　　　　)| Case No. CV 04-414-S-EJL<br><br>MEMORANDUM ORDER |

Plaintiff Securities and Exchange Commission ("SEC") initiated this action against Aqua Vie Beverage Corporation ("Aqua Vie"), Thomas J. Gillespie, Agua Vie's Chief Executive Officer, and Joseph J. Wozniak, a former officer of Aqua Vie, alleging that they (1) unlawfully sold unregistered securities of Aqua Vie, in violation of section 5 of the Securities Act of 1933 (the "Securities Act"); (2) fraudulently promoted Aqua Vie's common stock by faxing millions of one-page tout sheets to homes and businesses, in violation of section 17(a) of the Securities Act and section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"); and (3) failed to comply with the public reporting requirements of section 13(a) of the Exchange Act. Wozniak subsequently consented to the entry of a final judgment on all claims against him. The SEC then moved for summary judgment on the claims asserted against Aqua Vie and Gillespie (the "Defendants").

On May 14, 2007, United States Magistrate Judge Larry M. Boyle issued a Report and Recommendation, recommending that the SEC's Motion for Summary Judgment be granted

MEMORANDUM ORDER - 1

in part and denied in part. Specifically, the magistrate judge recommended that the Court enter summary judgment in favor of the SEC on claim one, for the sale of unregistered securities, and on claim three in part, for failure to file certain reports as required by the Exchange Act. However, on claim two, the securities fraud claim, and on the fraudulent filing portion of claim three and claim four, the magistrate judge determined that genuine issues of material fact precluded a recommendation of summary judgment.

Both parties have filed objections to Magistrate Judge Boyle's recommendation. Any party may challenge a magistrate judge's proposed recommendation regarding a dispositive motion by filing written objections within ten days after being served with a copy of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate. Id.; see also Fed. R. Civ. P. 72(b).

**Background**

The background of this case is covered in detail by the Report and Recommendation (the "Report") and the Court will only briefly summarize the facts here. Gillespie founded Aqua Vie and is its CEO, president, sole director and primary shareholder. Aqua Vie is a company in the business of producing and marketing a line of non-carbonated flavored water beverages sold under the name "Hydrators." In 1999, Aqua Vie entered into a long-term bottling contract with the Lyons Magnus Company.

Lyons Magnus used the patent-protected Remy Aseptic PET Bottling System ("Remy

Aseptic System") to bottle Aqua Vie's product. Aqua Vie's contract with Lyons Magnus, however, did not provide for Aqua Vie's exclusive use of the Remy Aseptic System. Despite the use of the Remy Aseptic System, Aqua Vie products bottled between 1999 and 2001 were contaminated with microbial mold on six occasions.

Dealing with this problem resulted in, among other things, a depletion of Aqua Vie's investment capital. In late 2002, after the mold problem at Lyons Magnus had been resolved, Gillespie sought to implement a new sales and marketing plan. To help finance the plan, Gillespie asked Wozniak to sell some of his Aqua Vie stock and lend the proceeds of the sale to Aqua Vie. Also, Aqua Vie sought to distribute stock through Valerie Gillespie, Defendant Gillespie's sister, for the purpose of compensating contractors for their services.

During this same time-frame, Aqua Vie and Lyons Magnus were involved in a contract dispute. Lyons Magnus complained that Aqua Vie's projected production for June 2002 through January 2003 was not being met with actual orders. In response, Agua Vie submitted a projected production of 30,000 cases for December 2002 and 150,000 cases for all of 2003. On January 30, 2003, Aqua Vie ordered 50,000 12-pack cases from Lyons Magnus but failed to tender payment in full with the purchase order. Lyons Magnus rejected the order, and on February 20, 2003, Lyons Magnus gave Aqua Vie notice that as of June 26, 2003, Lyons would not renew the bottling contract.

Also during this time-frame, Defendants hired two fax broadcasters, POLS Corp. and Fax.com, to fax over 19 million tout sheets to the public. POLS Corp. and Fax.com were both

paid with Aqua Vie stock. The fax sheets indicate that they are a weekly publication of either "OTC STOCK TODAY," or "OTC TODAY," or "American Investor." The faxes, while not identical, all contain information regarding Aqua Vie's revenue and stock price projections. For example, the Report quotes one fax as stating "AQVB [Aqua Vie] has secured valuable shelf space which is expected to generate sales revenue in excess of $7 million for the coming year." (Report and Recommendation at 9). Another states that "AQVB Hydartors are the result of over $30 million dollars, 10 years of research, and patented technology." (Id.). And, "Patented technology is substantial barrier to entry for AQVB competition." In regards to the stock price, the faxes variously project a "3 Month Target: $1.25" and a "12 Month Target" of either "$2.65" or "$5.25." (Id.).

All the faxes contain a disclaimer, in small type at the bottom of the tout sheet, that while not identical appear to impart similar information. Typical of the disclaimers is a statement warning that the "[i]nformation, opinions and analysis contained herein are based on sources believed to be reliable, but no representation, express or implied, is made as to its accuracy, completeness, or correctness." (Report at 10).

The SEC initiated an investigation of Aqua Vie's fax campaign. On May 2, 2003, the SEC ordered a trading suspension of Aqua Vie's stock. This lawsuit followed.

## Standards

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Adams v. Synthes Spine Co., 298 F.3d 1114, 1116-17 (9th Cir. 2002).

## Discussion

**1. Claim One - Sale of Unregistered Securities**

Defendants object to the Report's recommendation for entry of summary judgment on the claim alleging that Defendants violated the Securities Act by facilitating the sale of unregistered Aqua Vie stock through Mr. Wozniak. Defendants argue that the magistrate judged erred by failing to properly apply the exemption to liability for "transactions by any person other than an issuer, underwriter, or dealer" unless that person is "controlled" by the issuer of the stock. Defendants contend that the magistrate judge improperly determined that Mr. Wozniak, who was not an issuer, underwriter, or dealer, was controlled by Defendants. (Defs.' Objection at 4).

However as Plaintiff notes, the magistrate judge made no such determination. Instead, the magistrate judge explained that the Defendants' arguments concerning the exemption and control were not relevant to Defendants' liability. This is because Defendants were "substantial, necessary participants" in the transaction of unregistered stock via Mr. Wozniak. (Report and Recommendation at 27). As the Report explains:

> The record demonstrates that the entire debt conversion scheme was proposed and directed by Gillespie on behalf of Aqua Vie. Feretic Declaration, Ex. 20, pp. 48-59, 103-05 (Wozniak Deposition). Gillespie asked Mr. Wozniak to remit the proceeds back to Aqua Vie and Mr. Wozniak agreed. Whether or not Mr. Wozniak was legally obligated to apply the proceeds as he did is immaterial, since the entire scheme was fashioned under the assumption that Mr. Wozniak would loan the proceeds back to Aqua Vie as he did at an agreed upon rate of 80%. Id. at 64. In fact, Gillespie made the phone calls and determined when Mr.

>Wozniak's stock would be sold and to whom and then reported such sales to Mr. Wozniak for accounting purposes. Id. at 101-02, 162-63.

(Id. at 27-28). These uncontested facts demonstrate as a matter of law a violation of section 5 of the Securities Act. See e.g., SEC v. Murphy, 626 F.2d 633,651-52 & n.22 (9th Cir. 1980) (explaining that by devising the corporate financing scheme, preparing and reviewing memoranda, and meeting with investors, the defendant's "role in facilitating the transactions clearly was a substantial factor in the sales of unregistered securities [and] [t]hus, the district court properly held [defendant] liable as a participant in the offer and sale of unregistered securities.").

Defendants also object to the magistrate judge's recommendation for entry of summary judgment on Plaintiff's claim regarding the sale of stock registered via the S-8 form to Valerie Gillespie. Defendants argue that the magistrate judge's characterization of Ms. Gillespie's stock sales as a "capital raising transaction" is in error.

However as the Report notes: "It is undisputed that the stock distributed to Ms. Gillespie was first sold to the public on the open market and then the proceeds from the sale were used to pay Aqua Vie's 'consulting vendors.'" (Report and Recommendation at 29). This conduct violates section 5 of the Securities Act because "[r]egardless of intent, a public company and its officers violate the registration provisions by using employees as conduits for the sale of S-8 stock to the public because the true transaction-the distribution of securities to the public-is not registered." S.E.C. v. DCI Telecommunications, Inc., 122 F. Supp. 2d 495, 501 (S.D. N.Y. 2000). "Furthermore, even if the initial transaction, issuing the securities to the employee, is covered by S-8, the subsequent sales are not." (Report and

Recommendation at 30 (citing S.E.C. v. Cavanagh, 155 F.3d 129, 133 (2nd Cir. 1998))).

Thus, the magistrate judge properly recommended entry of summary judgment on this matter. Because there are no genuine issues of material fact as to Defendants' violations of section 5 of the Securities Act, the Court will enter summary judgment in favor of Plaintiff on Claim One.

### 2. Claim Two - Fraudulent Offer and Sale

Section 17(a) of the Securities Act and section 10(b) of the Securities Exchange prohibit fraud in connection with the offer and/or sale of any security. With regard to the Defendants' faxed tout sheets, the Report properly sets forth the elements that Plaintiff must demonstrate to establish liability: "(1) material misrepresentations or omissions of fact (2) with the requisite mental state or *scienter* (3) made in connection with the purchase or sale of securities." (Report and Recommendation at 13).

Defendants object to the Report's conclusion that the faxes contain the following misrepresentations: (1) that the faxes were "investor newsletters," when in fact they were not and had instead been developed by Aqua Vie and Aqua Vie's publicist; (2) that the stock would benefit from a patent that was a "barrier to entry" by competitors, when in fact the Defendants did not enjoy a barrier to entry resulting from a patented technology; (3) that Aqua Vie's stock target price would reach a high of between $1.55 to $5.25, when in fact there was no reasonable basis for such a projection; and (4) that Aqua Vie's revenue for calendar year 2003 would reach $7 million, when in fact Aqua Vie's actual product

projections to Lyons Magnus and the termination of its bottling contract by Lyons Magnus would not permit Aqua Vie to meet the $7 million revenue projection. (See id. at 14-19). The Report also noted the following omissions from the faxes: (1) that the stock predictions were impossible to achieve; (2) that the tout sheets were disseminated by a faxing company that was receiving Aqua Vie shares as payment; and (3) that Aqua Vie was distributing millions of shares of its stock in the market. (Id. at 19-20).

Plaintiff, in turn, objects to the magistrate judge's failure to find these misrepresentations and omissions both material and made with the requisite *scienter*. The materiality of a statement "depends on the significance the reasonable investor would place on the withheld or misrepresented information." (Id. at 20 (quoting United States v. Smith, 155 F.3d 1051, 1064 (9th Cir. 1998). *Scienter* may be established by a showing of reckless conduct. See e.g. Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568-69 (9th Cir. 1990).

An actor is reckless if he "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [he] could have done so without extraordinary effort." Howard v. Everex Systems, Inc., 228 F.3d 1057, 1064 (9th Cir. 2000).

With respect to the Defendants' objection to the recommendation regarding the misrepresentations and omissions, the Court finds no error in the Report. To the contrary, as the magistrate judge's discussion of this matter demonstrates the record is clear and overwhelming that when disseminating the faxes the Defendants made the misrepresentations and omissions identified by the Report. (See Report and Recommendation at 14-20). The Defendants point to nothing that undermines the Report's conclusions (see Defs.' Objections

at 8-10) and the Court finds no dispute of material fact on this issue.

However as to the Plaintiff's objections, the Court must agree that the magistrate judge incorrectly concluded that summary judgment was not appropriate on the elements of materiality and *scienter*. First, as to *scienter*, the Court finds no genuine issue of material fact that Defendants acted with extreme recklessness. Obviously, Defendants knew that the faxes were not "investor newsletters" because Defendants caused this deception to occur. And no matter how Defendants attempt to spin it, the undisputed fact remains that while the Defendants claimed in the faxes to enjoy the benefit of a patent which would serve as a "barrier to entry" in the marketplace, they did not hold, or have the exclusive right to, any such patent.

Similarly, the revenue projection of $7 million for calendar 2003 was unattainable under the facts known to the Defendants. As the Report explains:

> In order to meet the $7 million in revenue set forth in the fax, Aqua Vie would have to sell, on average, 80,000 cases of 12 bottle cases (960,000 for the year). Feretic Declaration, Ex. 14, p. 3 (Docket No. 65-4). However, at the same time the tout sheets were being faxed, Gillespie informed his sole co-packer, Lyons Magnus, that he would need a total of 180,000 12-bottle cases in all of 2003. Feretic Declaration, Ex. 13 (Docket No. 65-3). This production clearly would not allow Aqua Vie to meet the revenue projections set forth in the fax. Moreover, Lyons Magnus informed Defendants in [February 2003] that it would be terminating its bottling agreement in June 2003, and Defendants have set forth no evidence that Defendants were in the process of finding an alternate co-packer relationship.

(Report and Recommendation at 19). In an effort to counter the fact that Gillespie

knew he could not even produce 180,000 cases of product with an approximate revenue value of $1million at the same time he was projecting to potential investors a yearly sales volume of 960,000 cases with $7 million in revenue, Defendants point to statements by Gillespie and John Good. (See Report and Recommendation at 23-24). Defendant Gillespie states that he "believed that we would finally reach our projections [of 930,00 cases and approximately $6.8 million in revenue]." (Id. (citing Supplemental Statement of Disputed Facts, Attach. #1, Supplemental Affidavit of Thomas J. Gillespie ¶ 3)). Mr. Good similarly states that "I believe producing that amount of product was realistic." (Id. (citing Resp. to Motion for Summ. J., Ex. 3, Affidavit of John Good ¶ 4)).

Significantly, neither declarant mentions any factual support for his "belief" that the projected $7 million revenue was reasonable or attainable. And indeed there is nothing in the record that would support such a belief. On the contrary, as Plaintiff notes: "Gillespie was aware of the very facts that rendered his . . . revenue projection not simply doubtful or improbable, but rather impossible to achieve." (Pl.'s Objection at 8). Where conslusory statements such as these are at total odds with the undisputed factual record, they are insufficient to raise a genuine issue of material fact as to *scienter*. See e.g., Marx v. Computer Sciences Corp., 507 F.2d 485, 490 (9th Cir.1974) (holding that a financial forecast lacks a reasonable basis under the law if it was made without reasonable preparation or a valid basis); SEC v. Platforms Wireless Int'l, 2007 WL 1238707, *7 (S.D. Cal. April 25, 2007 (Slip Copy)) (explaining that defendant's "good-faith belief is not enough to create a genuine issue of fact as to whether he was reckless"); SEC v. TLC Invs. & Trade Co., 179 F. Supp. 2d 1149, 1157 (C.D. Cal. 2001) (granting summary judgment on scienter even though

defendant contended that he "did not recklessly represent anything fraudulent" because the "uncontroverted evidence in this case is to the contrary"). Accordingly, summary judgment is appropriate on the *scienter* element.[1]

The Court also finds that the Defendants' misrepresentations in the faxed tout sheets were material as they bore directly on Agua Vie's financial condition and prospects. See e.g., Murphy, 626 F.2d at 653 ("Surely the materiality of information relating to financial condition, solvency and profitability is not subject to serious challenge." (collecting cases)). Although the Report concluded that the disclaimer in each fax precluded summary judgment, the case law provides otherwise. Where, as here, the disclaimer in question is general cautionary language it is insufficient as a matter of law to negate the "failure to reveal known material, adverse facts." In re Initial Pub. Offering Sec. Litig., 358 F. Supp. 2d 189, 211-12 (S.D. N.Y. 2004) ("Generalized disclosures of amorphous risks will not shield defendants from liability as the cautionary language must be 'too prominent and specific to be disregarded' and must 'warn investors of exactly the risk that plaintiffs claim was not disclosed.'"); see also In re Westinghouse Sec. Litg., 90 F.3d 696, 709 (3d Cir.1996) (holding that general cautionary statements do not render misrepresentations immaterial).

---

[1] Defendants also assert that "there are disputed facts as to these issues" because the Report's "reliance on the threatened [contract] termination should be placed in context of the continual rocky interactions between [Aqua Vie and Lyons Magnus]." (Defs.' Objection at 9). This ignores that the termination of the bottling contract was not "threatened" but a fact. (Feretic Decl., Ex. 18 (docket no. 65-7)). But even if the bottling contract had not been terminated, Defendants' bottling projection for 2003 was for 180,000 cases and not the 960,000 cases necessary to generate $7 million in revenue.

MEMORANDUM ORDER - 11

There being no disputed facts as to the other elements of the securities fraud claim, the Court will enter summary judgment in favor of Plaintiff on Claim Two.

### 3. Claims Three & Four - False Filings and Certification

For reasons similar to those discussed above, the uncontested omissions from the Defendants' S.E.C. filings, (see Report and Recommendation at 31-32), are material as a matter of law because they directly bear on Aqua Vie's financial condition and prospects. See e.g., Murphy, 626 F.2d at 653. Therefore, summary judgment will be entered in favor of Plaintiff on these claims also.

### ORDER

Having conducted a de novo review of the objected to portions of the Report and Recommendation, this Court finds that except to the extent it is contrary to the Court's discussion above, Judge Boyle's Report and Recommendation is well founded in law and consistent with this Court's own view of the evidence in the record.  Specifically, **IT IS HEREBY ORDERED** that the Report and Recommendation entered on May 14, 2007 (docket no. 95), should be, and is hereby, **INCORPORATED** by reference and **ADOPTED** by this Court except for those parts of IV.A.2., IV.A.3., and IV.C.1 that are inconsistent with the Court's analysis as set forth above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (docket no. 62) is **GRANTED**.

**IT IS FURTHER ORDERED** that the trial date of September 11, 2007 is

**VACATED.**

**IT IS FURTHER ORDERED** that Plaintiff shall submit a proposed judgment within ten days of the date of this Order.

DATED: **July 9, 2007**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 13