**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>  Plaintiff, ) | |
| ) | Case No. CV 04-414-S-EJL |
| ) | |
| v.  ) | MEMORANDUM ORDER |
| ) | |
| ) | |
| AQUA VIE BEVERAGE CORP., et al, )<br>  Defendants. ) | |

Plaintiff Securities and Exchange Commission (the "SEC") initiated this action against Aqua Vie Beverage Corporation ("Aqua Vie"), Thomas J. Gillespie, Agua Vie's Chief Executive Officer, and Joseph J. Wozniak, a former officer of Aqua Vie, alleging that they (1) unlawfully sold unregistered securities of Aqua Vie, in violation of section 5 of the Securities Act of 1933 (the "Securities Act"); (2) fraudulently promoted Aqua Vie's common stock by faxing millions of one-page tout sheets to homes and businesses, in violation of section 17(a) of the Securities Act and section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"); and (3) failed to comply with the public reporting requirements of section 13(a) of the Exchange Act. Wozniak subsequently consented to the entry of a final judgment on all claims against him. The SEC then moved for summary judgment on the claims asserted against Aqua Vie and Gillespie (the "Defendants").

On July 9, 2007, the Court entered an Order that granted summary judgment in favor of the SEC on all its claims and directed the SEC to submit a proposed judgment. Consistent with the relief requested in its Complaint, the SEC asked that a judgment be entered against Defendants as follows: (1) injunctions prohibiting Defendants from violating the anti-fraud, registration and reporting provisions of the securities laws, (2) an officer and director bar, and a penny stock bar against Defendant Gillespie, and (3) disgorgement and civil penalties against Defendant Gillespie. Defendants oppose the proposed judgment in several respects.

## Discussion

<u>1. Permanent Injunction</u>

The SEC seeks a permanent injunction against Defendants enjoining them from future violations of the anti-fraud, registration and reporting provision of the Exchange Act and Securities Act. Permanent injunctions may be granted on summary judgment so long as there is a proper record and there exists no genuine issue of fact material as to whether injunctive relief is proper. <u>SEC v. Murphy</u>, 626 F.2d 633, 654-55 (9th Cir.1980). In deciding whether such relief is appropriate, courts consider the totality of the circumstances to determine whether there is a reasonable likelihood that the defendant will engage in future violations. Factors to be considered include the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations. <u>Id.</u> at 655.

Here, Defendants have been found in violation of both the Exchange Act and the Securities Act. Further, the record demonstrates that Defendants' violations of the securities laws were accomplished with extreme recklessness. Just as important, Defendant Gillespie has repeatedly failed to acknowledge the wrongful nature of his conduct. As the SEC notes, the Defendants' fraudulent activity did not end because Defendants came to understand the wrongfulness of their conduct, but instead because the SEC suspended trading in Aqua Vie's stock.

Taken together, this evidence suggests a pattern of behavior in favor of finding a reasonable likelihood of future violations. Accordingly, the Court will enter a permanent injunction against Defendants.

2. Officer and/or Director Bar and Penny Stock Bar

The court "has broad equitable powers to fashion appropriate relief for violations of the federal securities laws, which include the power to order an officer and director bar." SEC v. First Pacific Bancorp, 142 F.3d 1186, 1193 (9th Cir. 1998).  The Court is authorized by statute to impose an officer and director bar "if the person's conduct demonstrates substantial unfitness to serve as an officer or director."15 U.S.C. § 78u(d)(2). The bar may be imposed conditionally or unconditionally, and permanently or for a period of time to be determined by the court. Id. Factors to consider when deciding whether an officer and director bar should be imposed include (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when

he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. First Pacific Bancorp, 142 F.3d at 1193.

Here, Defendant Gillespie was CEO and principal owner of Aqua Vie at the time of the security violations, and he was the owner of almost all of Aqua Vie's stock. As mentioned above, Defendant Gillespie's numerous violations of the securities laws were at least reckless, and he has not yet acknowledged the wrongful nature of his conduct. Therefore, the Court finds it appropriate to imposes an eight-year officer and director bar against Defendant Gillespie.

As to the SEC's request for a penny stock bar, "[w]hen deciding to impose such a bar, the court looks at essentially the same factors that govern the imposition of an officer or director bar." SEC v. Steadman, 603 F.2d 1126, 1140 (5th Cir.). Resting on the grounds provided above, the Court also imposes a penny stock bar against Defendant Gillespie for eight years.

### 3. Disgorgement

The purpose of disgorgement is to prevent unjust enrichment. SEC v. J.T. Wallenbrock & Assocs., 440 F.3d 1109, 1113 (9th Cir. 2006). To determine the amount of disgorgement, the SEC need only show "a reasonable approximation of profits causally connected to the violation." First Pacific Bancorp, 142 F.3d at 1192 n. 6. The SEC seeks disgorgement in the amount of $2,929,814. The calculation of this amount is supported by citations to the record in the SEC's Supplemental Memorandum of Law in Support of Proposed Final Judgment, at 9.

Defendants object by first arguing that the proceeds from the fraudulent sales were used to pay vendors and for other legitimate business expenses, and therefore Defendant Gillespie was not unjustly enriched. However, this type of reasoning has been rejected by the Ninth Circuit. Id. at 1192. Because Defendant Gillespie was the principal owner of Aqua Vie "he received substantial personal benefit from the infusion of the illegally obtained proceeds." Id; see also Wallenbrock & Assocs., 440 F.3d at 1114-17 (concluding that "expenses in carrying out a fraudulent scheme . . . are hardly appropriate or legitimate deductions"); SEC v. Kenton Capital, Ltd., 69 F.Supp.2d 1, 16 (D.D.C. 1998) (surveying case law and concluding that the "overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses.").

Defendants also argue that it is not appropriate to make Defendant Gillespie subject to disgorgement on joint and several liability. However, it is a well settled principle that joint and several liability is appropriate for the disgorgement of illegally obtained proceeds "where two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws." First Pacific Bancorp, 142 F.3d at 1191.

Having considered Defendants' other arguments and after reviewing the record, the Court finds that the SEC has established a figure of $2,929,814 that is a reasonable approximation of unlawful proceeds, and that disgorgement of the same is a proper remedy. See id. The Court also finds it is appropriate to grant prejudgment interest on the disgorgement amount. See Kenton Capital, Ltd., 69 F.Supp.2d at 16-17.

### 4. Civil Penalty

The SEC requests that the Court impose third tier civil penalties pursuant to the Securities Act, 15 U.S.C. § 77t(d), and the Securities Enforcement Remedies and Penny Stock Reform Act of 1990, 15 U.S.C. § 78u(d)(3) (permitting civil penalties for violations of the Exchange Act). Third tier civil penalties are available when the securities law violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement [and] such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons." SEC v. Alpha Telcom, Inc., 187 F. Supp.2d 1250, 1263 (D.Or. 2002) (quoting 15 U.S.C. §§ 77t (d)(2)(C), 78u (d)(3)(B)(iii)).

The statute provides that any civil penalty is to be determined by the Court "in the light of the facts and circumstances" of the particular case. 69 F.Supp.2d at 17 (quoting 15 U.S.C. § 78u(d)(3)). Like a permanent injunction, civil penalties are imposed to deter the wrongdoer from similar violations in the future; therefore those same factors governing the imposition of a permanent injunction apply here. Alpha Telcom, Inc., 187 F. Supp.2d at 1263 (citing Murphy, 626 F.2d at 655). Thus, the Court finds that civil penalties are appropriate for the same reasons that it imposed the permanent injunction. However, contrary to the amount proposed by the SEC, the Court believes it sufficient to impose the statutory suggested penalty amount of $120,000 only for one violation of Claim Two, Fraudulent Offer and Sale, for a total third tier civil penalty of $120,000.

ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that the Plaintiff shall submit a revised proposed judgment, consistent with the above Order, within fourteen days of the date of this Order.[1]

DATED: **April 29, 2008**

_____
Honorable Edward J. Lodge
U. S. District Judge

---

[1] Plaintiff shall confer with the District's Financial Officer, Clyde Anderson, 1-208-334-9207, to identify appropriate language regarding the receipt of any disgorgement and/or penalty funds by the Court.

MEMORANDUM ORDER - 7